608 F.2d 140
 Bernice TUCKER, Individually and on behalf of all other
persons similarly situated, Plaintiffs-Appellants,
v.
Shirling Sam CALDWELL, Individually and in his official
capacity as Commissioner of Labor of the State of
Georgia, et al., Defendants-Appellees.
 No. 77-2583.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 10, 1979.
 
 Willie E. Lockette, Albany, Ga., Alfred O. Bragg, III, Macon, Ga., W. David Arnold, Atlanta, Ga., for plaintiffs-appellants.
 Wayne P. Yancey, Asst. Atty. Gen., Michael J. Bowers, Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before THORNBERRY, CHARLES CLARK and KRAVITCH, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 In this case we must decide whether appellant's due process rights were violated when, after a proper hearing to determine that appellant had received excessive unemployment benefits, the state recovered the excessive amount by reducing appellant's future benefits without an additional special hearing. We must also decide whether the trial judge erred in denying appellant's request for certification as a class action. Because we find that the state's procedure for recovering excessive benefits satisfies due process standards, and that the judge correctly denied class certification, we affirm the decision in the court below.
 
 I.
 
 2
 On April 17, 1976, the appellant, Bernice Tucker, was fired from her job at Seminole Manor Nursing Home in Georgia. On May 12 she applied for state unemployment benefits. In Georgia unemployed individuals are eligible for benefits if they file a proper application, maintain contact with the local unemployment office, seek new employment, and meet certain earnings requirements. Ga.Code Ann. § 54-609 (Supp.1979). The former employers of benefit recipients must contribute to the recipient's unemployment compensation. Ga.Code Ann. § 54-620 (1974). Claimants may be disqualified from receiving benefits if they leave their employment without good cause, refuse to accept suitable new employment, or if they are discharged from work for good cause. Ga.Code Ann. § 54-610 (Supp.1979).
 
 
 3
 In her application Tucker stated that she was discharged because she had been absent one week when her child was ill, and an additional two weeks when she suffered eye trouble. On the basis of this application, the initial examiner determined on June 18 that Tucker was eligible without disqualification for twenty weeks of benefits at forty-eight dollars per week, effective retroactively from May 9.
 
 
 4
 On June 28 Tucker's employer appealed this initial ex parte determination. The employer's appeal alleged that Tucker had been discharged for good cause because she had failed to report her absences as required by her employment agreement. The state labor board sent a copy of this appeal to Tucker.
 
 
 5
 On July 6 Tucker and her former employer received written notices of an evidentiary hearing, scheduled on July 14, about her unemployment compensation claim. The notice to Tucker advised her of the time, date, and place of the hearing, her right to representation by counsel, her right to subpoena witnesses on her behalf, her right to cross-examine opposing witnesses, and the issues to be considered in the hearing. According to the notice, the issue in Tucker's case was
 
 
 6
 whether claimant's discharge or suspension was due to failure to obey orders, rules or instructions or failure to discharge the duties for which employed: "Section 5(b) of the Employment Security Law." Ga.Code Ann. 54-610(b). (Possible disqualification: Loss of from five to twelve weeks of unemployment benefits.)
 
 
 7
 The evidentiary hearing was held on July 14, and, as a result of Tucker's request for a continuance, concluded on August 3. During the appeal period Tucker continued to receive benefits pursuant to Ga.Code Ann. § 54-612(5) (1974). On October 1, the referee issued his finding that Tucker had been discharged for good cause because she had not properly informed her employer about her absences as she had agreed to do beforehand. As a result of this finding, the referee ruled that Tucker should be disqualified from receiving nine weeks of benefits under Ga.Code Ann. § 54-610(b) (Supp.1979). Tucker did not appeal this decision. Section 610(b)[1] states that ordinarily the disqualification period should include the week in which the claim is filed, plus the weeks immediately following the week of filing. If benefits allowed without disqualification at the initial examination are contested by the employer, however, section 54-612(5) requires that the benefits be continued during the appeals period. As a consequence, Tucker had more than used up her initial nine weeks of benefits by the time the referee issued his ruling.
 
 
 8
 After receiving the referee's ruling, the state demanded payment of the nine weeks worth of benefits, totalling $432, for which Tucker was disqualified, but which she had already collected. The state's notice for payment announced that if Tucker did not repay the overpayment within ten days, the state would withhold her remaining future benefits to cover the referee's judgment. Tucker refused to pay the $432. The state then withheld all her remaining benefits, totalling $288 by that time, for the purpose of satisfying the judgment. Tucker still owes the state $144.
 
 
 9
 In February, 1977, Tucker filed an alleged class action suit under 42 U.S.C. § 1983 (1976). She claimed that the state's practice of withholding future benefits to recover past overpayments violated the due process rights of all unemployment benefit recipients from whom the state tried to collect overpayments without proper notice and a hearing on the issues of overpayment and restitution. After discovery, depositions, stipulations, and oral argument by the parties, the district judge denied Tucker's motions for a preliminary injunction and class certification. The judge granted the state's motion to dismiss. From these orders Tucker now appeals.
 
 II.
 
 10
 In her suit Tucker does not contest that she was improperly overpaid, or that she is now unjustly enriched by $144 payable to the state. Instead, she contends that Ga.Code Ann. § 54-648.1 (1974), as then in effect,[2] provides the exclusive method by which the state could withhold future benefits. Former section 648.1 stated that
 
 
 11
 (a)ny person who, by reason of the nondisclosure or misrepresentation by him or by another, of a material fact (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent) has received any sum as benefits under this Chapter while any conditions for the receipt of benefits imposed by said Chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the commissioner, either be liable to have such sum deducted from any future benefits payable to him under this Chapter or shall be liable to repay to the commissioner for the unemployment compensation fund, a sum equal to the amounts so received by him, and such sum shall be collectible in the manner provided in section 54-648 for the collection of past-due contributions.
 
 
 12
 Tucker claims that her due process rights were violated when the state withheld her future benefits without giving her notice or a proper hearing to determine whether she misrepresented or failed to disclose material facts before the initial examiner.
 
 
 13
 The test for evaluating this kind of procedural due process challenge was enunciated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976), as follows:
 
 
 14
 (I)dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 15
 Even if we accept Tucker's contention, which is not required by the express language of the statute, that section 648.1 provides the exclusive method for the state to withhold future benefits, the Eldridge test shows that the state's failure to provide appellant a special hearing about misrepresentation and nondisclosure, in addition to the hearing about improper overpayment, does not violate Tucker's right to due process of law.
 
 
 16
 Under the first Eldridge factor, Tucker's interest in receiving unemployment benefits would ordinarily be substantial. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Her interest in future benefits is less substantial, however, in light of her admitted liability to the state in the amount of $432, which she refuses to pay.
 
 
 17
 The second Eldridge factor, concerning the risk of an erroneous deprivation, is decisive. Section 648.1 does not require the state to show that a recipient fraudulently, intentionally, or even negligently misrepresented or failed to disclose material facts that would have prevented the overpayment. Section 648.1 is not concerned with fault or credibility.[3] The statute merely provides an objective standard that allows future benefits to be withheld for the purpose of recovering overpayments if any person even someone other than the recipient for any reason misrepresents or fails to disclose a material fact with regard to the benefits. In this case the referee's finding that Tucker was fired for failing to report about her absences necessarily shows that her application, which claimed that she was fired solely because of her and her child's illnesses, failed to disclose a material fact. Even if the overpayment was caused by the accidental or intentional error of the initial examiner or of some other state employee in computing or processing Tucker's application, the broad language of section 648.1 would still allow the withholding of future benefits because some person even a state employee had misrepresented or had failed to disclose a material fact. As a result of this broad statutory language, any finding that Tucker was improperly overpaid necessarily shows that someone somehow misrepresented or failed to disclose a material fact. The risk of an erroneous deprivation is almost nonexistent.
 
 
 18
 The third Eldridge factor concerns what burden upon the state additional procedural requirements would entail. The state could have explained at little extra cost in its notice about the appeal that future benefits might be withheld if a material fact had been misrepresented or had not been disclosed. At oral argument the parties revealed that the state had adopted this measure after Tucker's suit was filed. The state's action is commendable, although the original notice advising that five to twelve weeks of benefits would be lost in the event of overpayment is sufficient to satisfy due process standards. Once liability for improper overpayments is established, an additional hearing that allowed recipients to present witnesses and evidence about nondisclosure or misrepresentation would require extra expense and delay. Such an additional hearing would result in so few, if any, differences in the actual withholding of future benefits that such a procedure is not necessary to satisfy due process standards once liability for the overpayments has been established.
 
 
 19
 Our analysis in this case is consistent with the reasoning of the Supreme Court in Dixon v. Love, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) and in Califano v. Yamasaki, --- U.S. ----, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In Dixon an Illinois statute allowed state authorities summarily to revoke a driver's license without a prior hearing if state records showed that the driver had committed repeated traffic violations. The Court held that the statute authorizing revocation without a prior hearing did not violate due process standards. Like Tucker, the claimant in Dixon had full opportunity to contest his liability for the underlying substantive charges that gave rise to revocation of the license. No additional hearing is necessary before the state makes an objective determination to apply a particular punitive or remedial measure, such as revocation of the license in Dixon or withholding future benefits in this case.
 
 
 20
 In Yamasaki the Secretary of Health, Education, and Welfare had followed the practice of determining without a hearing whether certain recipients had received excessive social security benefits, then deciding without a hearing whether to recoup these excessive payments by withholding future benefits. Claimants could only later request an oral hearing about these decisions. In applying due process principles to this procedure, the Supreme Court distinguished between withholding future benefits under a fault standard, and withholding future benefits under a no-fault, objective standard, similar to section 648.1 in this case. The Court held that the Due Process Clause prevented the Secretary from withholding future benefits without a hearing under the fault standard in section 204(b) of the Social Security Act, 42 U.S.C. § 404(b) (1976), which allows recoupment from future benefits only when the claimant is at fault for receiving excessive payments. The Court held that the Secretary could withhold future benefits without a hearing under the more objective standard in section 204(a) of the Act, 42 U.S.C. § 404(a) (1976), however, because that section did not require a finding of fault on the part of the claimant before future benefits could be withheld. As under section 648.1 in this case, the risk of an erroneous deprivation is so slight under the no-fault standard in Yamasaki that individual hearings are not necessary to satisfy due process standards. --- U.S. at ----, 99 S.Ct. at 2555, 61 L.Ed.2d at 189.
 
 III.
 
 21
 Tucker also contends that the judge erred in denying class certification for her suit. She brought her claim on behalf of herself and
 
 
 22
 all individuals who defendants allege to be liable to the Unemployment Compensation Fund of the State of Georgia for over payments alleged to have been made to them from that Fund, and from whom defendants have sought, are seeking, or will seek, restitution for said alleged over payments, whether by recoupment from current or future benefits or by direct cash payments, but without either notice or an opportunity for a hearing on the issues of over payment and restitution prior to the initiation of said restitution.
 
 
 23
 Tucker concedes that she received proper notice and a hearing on the issue of overpayment, and we find that she received adequate notice and a hearing on the issue of restitution. For these reasons, Tucker does not have a sufficient nexus with the other members of her proposed class to represent their claims in this litigation. See East Texas Motor Freight System v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); Satterwhite v. City of Greenville, 578 F.2d 987 (5th Cir. 1978) (en banc), Petition for cert. filed, 47 U.S.L.W. 3465 (January 9, 1979).
 
 IV.
 
 24
 In conclusion, we hold that appellant's due process rights were not violated when, after a proper hearing to determine that appellant had received excessive unemployment benefits, the state recovered this excessive amount by reducing her future benefits without a special hearing. We also hold that the trial judge properly denied appellant's motion for class certification. For this reason, the decision in the court below is affirmed.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 54-610 Disqualification for benefits
 An individual shall be disqualified for benefits
 (b) For the week or fraction thereof in which he has filed an otherwise valid claim for benefits after he has been discharged or suspended from work with his most recent employer for failure to obey orders, rules or instructions or the failure to discharge the duties for which he was employed, and for not less than four weeks and not more than 11 weeks, which immediately follow the week in which said valid claim was filed as determined by the commissioner in the case according to the seriousness of the offense, not counting the waiting period: Provided, however, there shall be charged against the benefits to which the individual is entitled under section 54-604, an amount equal to his weekly benefit amount for each week of such disqualification: Provided, however, in the commissioner's determination the burden of proof of just discharge or suspension for cause as set forth shall be on the employer and the presumption shall be with the employee.
 
 
 [2]
 In 1978 the Georgia legislature revised section 648.1 by removing the language about nondisclosure and misrepresentation, and by limiting the amount of future benefits that may be withheld to fifty percent of each payment:
 54-648.1 Liability for benefits erroneously collected
 Any person who has received any sum as benefits under this Chapter while any conditions for the receipt of benefits imposed by this Chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, shall, in the discretion of the commissioner, either be liable to have such sums deducted from any future benefits payable to him under this Chapter, no single deduction to exceed 50 per centum of the amount of the payment from which such deduction is made, or shall be liable to repay the commissioner for the Unemployment Compensation Fund, a sum equal to the amount so received by him, and such sum shall be collectible in the manner provided in this Chapter.
 
 
 [3]
 The remedies for intentional nondisclosure or misrepresentation about eligibility for benefits are provided in Ga.Code Ann. § 54-648.2 (Supp.1979):
 54-648.2 False statements and representations affecting benefits
 Any person who makes a false statement or misrepresentation as to a material fact, knowing the same to be false or who knowingly fails to disclose a material fact to obtain or increase benefits under this Chapter, either for himself or for any other person, or who knowingly accepts benefits under the Chapter to which he is not entitled, shall, upon an appropriate finding by the commissioner, cease to be eligible and shall forfeit all benefits, paid or unpaid, for any weeks of unemployment subsequent to the commission of said act and/or omission, including any benefits to which he would otherwise be entitled during the remainder of any incompleted calendar quarter and the next four complete calendar quarters immediately following such determination by the commissioner . . . .