Mieczyslaw KOSTELIC, individually and on behalf of all others similarly situated, Plaintiffs,

v.

E. Allen BERNARDI, Director, Illinois Department of Labor, Agaliece Miller, Administrator, Bureau of Employment Security, Stella Cuthbert, Commissioner, Division of Unemployment Insurance, and the Illinois Department of Labor, Defendants.

No. 81 C 5928.

United States District Court, N. D. Illinois, E. D.

April 12, 1982.

---

5. Apparently, defendants' exhibit G in the Urbanski deposition consisted of the eight April, 1979 invoices, plus five invoices charging for unearned discounts taken on previous payments. See amended exhibit A to the deposition of Isaac Danzig.

Robert Masur, Frankel, McKay & Orlikoff, Chicago, Ill., for plaintiffs.

Tyrone C. Fahner, Ill. Atty. Gen., Margarite Primozich, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Plaintiff Mieczyslaw Kostelic brings this action challenging defendants' decision to withhold from Kostelic, and persons similarly situated, state unemployment insurance benefits. This withholding is said to violate the Social Security Act, 42 U.S.C. § 501 *et seq.*, and the Fourteenth Amendment of the United States Constitution. Kostelic seeks declaratory and injunctive relief and damages from the administrators of the Illinois Unemployment Insurance Program.

Defendants have moved to dismiss the complaint on the grounds that there is no jurisdiction over the defendant Illinois Department of Labor, and that the complaint fails to state a claim upon which relief can be granted. For reasons hereinafter stated, the defendants' motion is granted in part and denied in part.

### Statement of Facts

Plaintiff Kostelic applied for and received unemployment benefits during 1975–1976. He received benefits for 26 weeks under ¶ 403 of the Illinois Unemployment Insurance Act, Ill.Rev.Stat. ch. 48, ¶¶ 300 et seq.,

which is the core program of regular unemployment benefits funded by contributions from private employers. As he was still unemployed, after 26 weeks Kostelic became eligible for an additional 13 weeks of benefits under the Federal Extended Benefits program, ¶ 409 of the Illinois Act, which is jointly funded by the State of Illinois and the federal government, and then for several weeks of benefits under the Federal Supplemental Benefits program (the FSB program), Emergency Unemployment Compensation Act, §§ 101–105, 26 U.S.C. § 3304 note, which is funded solely by the federal government.

In September, 1976, an unemployment insurance referee held that Kostelic had fraudulently received benefits for a portion of the above period in the amount of $1,708, which included $1,332 in regular and extended benefits and $376 under the FSB program.

Kostelic was employed in 1976 but in May, 1980, he again became unemployed. He applied for unemployment insurance benefits and was found eligible for maximum weekly benefits of $180. Kostelic has never received any of the unemployment insurance benefits, however. Defendants, relying upon the referee's finding of fraud, first recouped $1,332 from his present benefits for the past overpayments in the regular and extended benefit programs, pursuant to ¶¶ 900 and 901 of the Illinois Act. As Kostelic still owed $376 in overpayments under the FSB, defendants informed him that they would not pay any regular state unemployment benefits until he repaid the $376 in cash. Kostelic has not repaid the $376, and defendants have continued to withhold his current benefits.

Defendants contend that the Eleventh Amendment bars suit against the Illinois Department of Labor and that defendants were authorized to withhold state benefits until the FSB overpayments were repaid in cash. These are the issues that must be decided.

### The Eleventh Amendment Argument

■ The Eleventh Amendment does not bar suit against the Illinois Department of Labor as an alter ego of the state for payment of past benefits because the unemployment benefits claimed are payable from a trust fund comprised solely of money contributed by private employers in the State of Illinois. *Jenkins et al. v. Bowling et al.*, 80 C 928 (January 28, 1982) (Grady, J.). *See Miller-Davis Co. v. Illinois State Toll Highway Authority*, 567 F.2d 323 (7th Cir. 1977) (Eleventh Amendment does not bar recovery from the Illinois State Toll Highway Authority special fund segregated from general public funds); *Bowen v. Hackett*, 387 F.Supp. 1212 (D.R.I.1975) (Eleventh Amendment does not bar payment of retroactive benefits from the unemployment insurance fund because the fund is segregated from the general state revenues).

■ The question remains, however, whether a cause of action will lie against the Illinois Department of Labor. Both parties agree that the Department of Labor is not a "person" for 42 U.S.C. § 1983 purposes,[1] but Kostelic contends that the Department can be sued for the limited purpose of obtaining an award of attorneys' fees under 42 U.S.C. § 1988. It is true that attorneys' fees may be awarded, payable by the state, when officials are sued in their official capacity, *Hutto v. Finney*, 437 U.S. 678, 694, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522 (1978), but § 1988 does not provide an independent cause of action. As Kostelic is not proceeding against the Department under § 1983, and as no other basis for jurisdiction appears in the complaint, the motion to dismiss the Department is granted.

### Repayment of FSB Overpayments

■ The Social Security Act requires that state programs "insure full payment of unemployment compensation when due," 42 U.S.C. § 503(a)(1). Kostelic claims that defendants' requirement that he repay in cash fraudulently obtained overpayments of federal benefits before he may receive regular

1. The court offers no opinion on this issue and notes that the question is not settled.

state benefits violates the "when due" requirement of the Social Security Act.[2]

The dispute centers on the differing interpretations of the FSB statute, which provides the remedy for overpayment of FSB benefits whether obtained by fraud or otherwise. Emergency Unemployment Compensation Act, § 105(b), 26 U.S.C. § 3304 note.[3] If a claimant fraudulently receives FSB benefits, § 105(b)(1) provides that the individual is ineligible for further FSB benefits until he or she complies with the applicable state fraud provision. Subsection (2) applies in situations where persons have received, by fraud or otherwise, FSB benefits to which they were not entitled, and authorizes each state "to require such individuals to repay the amounts ... to the State agency."[4] The subsection further authorizes each state to recover overpayments by deducting the amount from current federal unemployment benefits.

Kostelic argues that defendants, in requiring him to repay the $376 in FSB benefits, are limited to two options: they can recoup the amount from any federal unemployment benefits that he is currently receiving (which is none), or they can bring suit against him. Conversely, defendants argue that § 105(b) supplements but does not preempt state law and that they are not limited to the two remedies identified by plaintiff. Then, somewhat illogically, defendants contend that § 105(b) authorizes them to withhold current state unemployment benefits but does not authorize them to recoup the $376 from the state benefits.

The court is not convinced by either party's reasoning. The statutory language authorizes the State to "require" repayment but does not identify the means available to do this, nor does it expressly limit the State to the filing of a lawsuit in order to obtain repayment.

The pertinent regulation, 20 C.F.R. § 618.15(a) offers some assistance. It provides that:

[T]he State agency shall take all reasonable measures authorized under any State law or Federal law to recover for the account of the United States the total

---

**2.** Kostelic also contends that defendants' failure to advise Kostelic of his right to contest the determination and to seek a waiver of the repayment requirement violates the "fair hearing" provision of 42 U.S.C. § 503. The court does not reach this issue, in light of its decision on the withholding issue. Defendants may raise the issue on a motion for partial summary judgment.

**3.** The FSB statute § 105(b) states:
(1) If an individual knowingly has made, or caused to be made by another, a false statement or representation of a material fact, or knowingly has failed, or caused another to fail, to disclose a material fact, and as a result of such false statement or representation or of such nondisclosure such individual has received an amount of emergency compensation under this Act to which he was not entitled, such individual—
(A) shall be ineligible for further emergency compensation under this Act in accordance with the provisions of the applicable State unemployment compensation law relating to fraud in connection with a claim for unemployment compensation; and
(B) shall be subject to prosecution under Section 1001 of title 18, United States Code.
(2)(A) In the case of individuals who have received amounts of emergency compensation under this Act to which they were not enti-

tled, the State is authorized to require such individuals to repay the amounts of such emergency compensation to the State agency, except that the State agency may waive such repayment if it determines that—
(i) the payment of such emergency compensation was without fault on the part of any such individual, and
(ii) such repayment would be contrary to equity and good conscience.
(B) The State agency may recover the amount to be repaid, or any part thereof by deductions from any emergency compensation payable to such individual under this Act or from any unemployment compensation payable to such individual under Federal unemployment compensation law administered by the State agency or under any other Federal law administered by the State agency which provides for the payment of any assistance or allowance with respect to any week of unemployment, during the three-year period after the date such individuals received the payment of the emergency compensation to which they were not entitled, except that no single deduction may exceed 50 per centum of the weekly benefit amount from which such deduction is made.

**4.** The state eventually must turn over the amounts repaid to the federal government.

sum of the payment to which the individual was not entitled [under the FSB]. Neither party has identified any Illinois statute that authorizes the State to recover overpayments made under federal unemployment insurance programs. The Illinois Act by definition governs the repayment of state unemployment benefits only. See Ill. Rev.Stat. ch. 48, ¶¶ 312, 490 and 491.

As noted above, however, the FSB statute itself authorizes the State to recover FSB overpayments. This court's inquiry, therefore, must focus on whether the State's conduct in withholding current state benefits is a "reasonable measure" to obtain repayment. In this inquiry, the court can look by analogy to state law.[5] If state law would sanction defendants' conduct, assuming state benefits were involved, this would argue strongly in favor of finding the State's conduct to be reasonable. Conversely, if state law would prohibit the challenged conduct, defendants must furnish some other justification for their actions.

The court determines that under Illinois law the State could not condition the payment of current state benefits on Kostelic's repayment in cash of the earlier state benefits he fraudulently obtained.[6] Significantly, in this case defendants did not do this. They did not withhold Kostelic's current benefits until he repaid the $1,332 in regular and extended state benefits; instead, they recouped that amount from his current benefits pursuant to ¶ 490 of the Illinois Act. Furthermore, this practice of recouping past overpayments from current benefits is more reasonable than withholding current benefits until past overpayments are repaid in cash. Recoupment balances the cash flow problems of the unemployed with the State's interest in deterring fraud[7], while requiring cash repayment in advance may as a practical matter make it impossible for an unemployed person to collect benefits.

The State could not withhold Kostelic's current state benefits until he repaid the earlier state benefits he had fraudulently received, and it has not come forward with any reason why it should be able to do so when the prior benefits involved are federal instead of state benefits, especially as other less onerous methods of recovery are available. Defendants' action in withholding the benefits was not a "reasonable measure" and thus not authorized under § 105(b) and 20 C.F.R. § 618.15(a). Defendants' motion to dismiss for failure to state a claim is denied.

### Conclusion

Defendants' motion to dismiss the Illinois Department of Labor is granted, and defendants' motion to dismiss the complaint is denied. In view of the court's ruling on the legal issues, the case is now ripe for summary disposition with respect to plaintiff's individual claim and with respect to the injunctive and declaratory relief for the class. Accordingly, the parties are directed to confer on the class issues and the case is set for status on April 27, 1982.

---

5. Alternatively, the court could construe the regulation to permit recovery of FSB benefits by any method authorized under state law for the recovery of state unemployment benefits. In either case, the result here would be the same: the State's action in withholding current benefits is unauthorized.

6. Ill.Rev.Stat. ch. 48, ¶ 491, provides that, in cases of fraudulently obtained overpayments, the State may require repayment in cash or may recoup pursuant to ¶ 490. Eligibility for current benefits, however, is not conditioned upon either cash repayment or recoupment. Moreover, one Illinois appellate court has held that the State cannot require repayment in cash where recoupment is possible, *Meadows*

*v. Grabiec*, 20 Ill.App.3d 407, 314 N.E.2d 283 (1974).

7. The court rejects the argument that the only recoupment permitted under § 105(b) is from federal benefits because the court does not interpret subsection (2)(B) as listing the exclusive programs from which the State could recoup overpayments. That subsection merely gives the State the authority, which it would otherwise lack, to recoup overpayments from certain federal benefits. Had the State chosen to recoup the $376 from Kostelic's current benefits, this court would have had no problem in finding that this was a reasonable measure authorized under § 105(b) and 20 C.F.R. § 618.15(a).