Steven J. LOSEY, Plaintiff,

v.

Lillian ROBERTS, as Industrial Commissioner of the State of New York, Defendant.

No. 82–CV–461.

United States District Court, N.D. New York.

Sept. 26, 1986.

Chemung County Neighborhood Legal Services, Inc., Ithaca, N.Y., for plaintiff; Paul Bennett, of counsel.

Robert Abrams, Atty. Gen. for the State of N.Y., New York City, for defendant; Steven Segall, Sr. Atty., of counsel.

## MEMORANDUM—DECISION AND ORDER

McCURN, District Judge.

Plaintiff Steven Losey brings this action to challenge the defendant New York State

Commissioner of Labor's determination to withhold plaintiff's currently due unemployment benefits as an offset to a prior overpayment that resulted from plaintiff's fraudulent statements concerning his unemployment status. Plaintiff contends that the setoff practice as employed by the defendant violates federal statutory provisions and the Due Process Clause of the Fourteenth Amendment. This matter is before the court on cross motions for summary judgment. For the reasons discussed below, the court grants defendant's motion for summary judgment.

## BACKGROUND

The plaintiff, Steven J. Losey, an employee at Ithaca Gun Company, Ithaca, New York, experienced periodic layoffs whenever company business slowed. Plaintiff applied for and received unemployment benefits from March 8, 1976—January 23, 1977, September 19, 1977—February 12, 1978, and October 30, 1978—May 6, 1979. On January 28, 1980, the department's local claims examiner determined that plaintiff had been overpaid $8,995 in connection therewith which he was obligated to repay the state. The claims examiner found that plaintiff's TV repair hobby held a money earning potential and that plaintiff's negative assertions on his original and successive applications for benefits constituted a wilful misrepresentation that he was unemployed.

On March 21, 1980, after a hearing at which full opportunity to present witnesses and written evidence was afforded plaintiff, the Administrative Law Judge (ALJ) upheld the local examiner's initial determination as to ineligibility to receive benefits. The ALJ found, however, that plaintiff was not guilty of wilful misrepresentation.[1]

On appeal of the ALJ's decision, the Unemployment Insurance Appeals Board held in an opinion dated August 19, 1980, that:

(1) the plaintiff was actively engaged in the purchase, repair, and sale of television sets; (2) plaintiff invested over $400 in his business and had a tax number under the name of "Steve's T.V."; (3) plaintiff had been guilty of wilful misrepresentation when he indicated on his claim form that he was not engaged in activity that may bring in income; and (4) plaintiff had been overpaid $8,995 in benefits which were recoverable because of plaintiff's false certifications.

The New York Supreme Court, Appellate Division, Third Department on June 18, 1981, affirmed the Appeals Board decision without opinion.

In December of 1981, the plaintiff was again laid off and subsequently filed a new claim for unemployment benefits. Because of the prior overpayment, the Commissioner of Labor ruled that the plaintiff, although otherwise eligible, could not receive benefits until the overpayment was repaid through the setoff procedure. This decision was appealed to the ALJ, who on February 1, 1982, sustained the determination below. On appeal the Unemployment Insurance Appeals Board found no errors of fact or law and adopted the findings of the ALJ as the findings of the Board.

On May 12, 1982, the plaintiff filed the present action claiming that the setoff practice as employed by the defendant (1) conflicts with the federal statutory requirements that each state, before it receives federal funding for its unemployment insurance program, demonstrate to the Secretary of Labor that its form of administration of the program is "reasonably calculated to insure full payment of unemployment compensation when due," 42 U.S.C. § 503(a)(1); (2) violates the prohibition of any encumbrances on unemployment insurance pursuant to 26 U.S.C. § 3304(a)(4); (3) violates the Due Process Clause of the Fourteenth Amendment;[2] and (4) contra-

---

1. Under New York Labor Law § 597(3), a determination regarding a benefit claim may be reviewed only within one year of issuance unless there is fraud or wilful misrepresentation. Therefore, under the ALJ's findings, only those benefits received after January 28, 1979 would have been recoverable. Furthermore, in the absence of fraud or wilful misrepresentation only 50% of currently due benefits may be withheld to offset a prior overpayment debt.

2. Plaintiff originally claimed that the setoff practice also violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitu-

venes the purpose of the statutory unemployment scheme in that the setoff was applied without inquiry into the individual circumstances of the plaintiff.

Defendant now moves for summary judgment on the grounds that the prior administrative decisions which were affirmed by the New York state court conclusively establish her counterclaim for the amount of the overpayment, and that the statutory and constitutional claims of the plaintiff are meritless entitling her to a summary dismissal of the complaint.

The plaintiff has cross-moved for summary judgment on the grounds that none of the material allegations in the complaint have been controverted by the defendant and that they conclusively establish his right to recover. Furthermore, plaintiff contends that the defendant is not entitled to summary judgment on her counterclaim alleging a factual question as to whether benefits were obtained fraudulently, and he claims a Seventh Amendment entitlement to a jury trial as to money damages.

## DISCUSSION

■ Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment when it has demonstrated "the absence of any material factual issue genuinely in dispute" and that it is entitled to judgment "as a matter of law." *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 115 (2d Cir.1984); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). The court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984). However, "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Eastway Construction Corp.*, 762 F.2d at 249.

When a motion for summary judgment is supported by evidentiary material, the non-moving party may not rest his opposition on mere conclusory allegations or denials. Rule 56(e) of the Federal Rules of Civil Procedure requires the party opposing summary judgment to set forth particular evidentiary matters which disclose the presence of genuine issues of material fact which require a trial. *Id.; Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980); *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

Plaintiff contends that the defendant is not entitled to summary judgment on her counterclaim. Plaintiff controverts the defendant's claim that benefits were obtained fraudulently, the amount of overpayment and the allegation that he was not totally unemployed. Plaintiff also alleges that he has a constitutional right to a jury trial before a money judgment can be granted against him.

Defendant counters by stating that the prior administrative determination that plaintiff had been overpaid $8,995 and that the overpayment was recoverable because of plaintiff's wilful misstatements precludes this court from reexamining those questions. Defendant points out that plaintiff had a full and fair opportunity to litigate the question of whether there was fraud and the amount of the overpayment. Furthermore, the administrative determination was affirmed by the New York Supreme Court, Appellate Division, Third Department.

■ A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Bottini v. Sadore Management Corp.*, 764 F.2d 116 (2d Cir. 1985). Therefore, the preclusive effect in

---

tion and the New York Constitution, Article IV, section 8, because the policy was not published in the Department of State's Code of Rules and Regulations. Plaintiff withdrew this contention

in his memorandum of law in opposition to the defendant's motion to dismiss. *Losey v. Roberts*, 570 F.Supp. 1465 (N.D.N.Y.1983).

federal court of the prior administrative determination affirmed by the New York state court must be determined under New York law. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

██ Under New York law, "the doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to that used in a court of law." (citations omitted). *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825, 467 N.E.2d 487, 489 (1984). "Such determinations, when final, become conclusive and binding on the courts." *Bernstein v. Birch Wathen School,* 71 A.D.2d 129, 132, 421 N.Y.S.2d 574, *aff'd.* 51 N.Y.2d 932, 434 N.Y.S.2d 994, 415 N.E.2d 982 (1979).

"The doctrine of collateral estoppel … precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same." *Ryan,* 62 N.Y.2d at 500, 478 N.Y.S.2d at 826, 467 N.E.2d at 490. For the doctrine of collateral estoppel to apply there must be an identity of issue, the issue must have been material to the first proceeding and essential to the decision therein, and the party against whom collateral estoppel is asserted must have had a full and fair opportunity to contest the decision now said to be controlling. *Id.*

The determination of whether the first action provided a full and fair opportunity to litigate the question requires a consideration of the nature of the forum and the importance of the claim in prior litigation, the incentive to litigate and the actual extent of litigation, the competence of counsel, the availability of new evidence, and the foreseeability of future litigation. *Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d at

827, 467 N.E.2d at 491; *Gilberg v. Barbieri,* 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981).

"In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." *Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

Application of the foregoing rules of law to the facts in the present case establish that the plaintiff is barred from relitigating the questions of fraud, amount of the overpayment, and whether or not he was totally unemployed. The decision of the Unemployment Insurance Appeals Board dated August 19, 1980, which was affirmed by the New York state court satisfies all the requirements of collateral estoppel.

The issue determined by the Unemployment Insurance Appeals Board was whether plaintiff had received an overpayment by way of his wilful misstatements, the amount of that overpayment, and whether the overpayment was recoverable. The Board held that plaintiff was not totally unemployed, he had been overpaid $8,995 due to his wilful misstatements, and that the overpayments were recoverable. Allowing plaintiff to relitigate these issues would frustrate the policies behind the doctrine of collateral estoppel which are protecting litigants from the burden of relitigating an identical issue with the same party and promoting judicial economy by preventing needless litigation. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Moreover, the determination of the Board concerned the same issues that plaintiff wishes to relitigate, so there can be no question that the determination of those issues was essential to the judgment below. *See Ryan,* 62 N.Y.2d at 500, 478 N.Y.S.2d at 826, 467 N.E.2d at 490.

Plaintiff has not met his burden of demonstrating that he did not have a full and

fair opportunity to litigate the questions at the administrative level. On the contrary, the facts reveal that plaintiff was given every opportunity to present evidence before the ALJ. The incentive to litigate the question was great, because on the form notifying plaintiff of the overpayment it stated that overpayments received through fraud would be recoverable by way of the setoff procedure. The actual extent of the litigation was also substantial in that plaintiff appealed the decision of the Board to the New York Supreme Court, Appellate Division. Including the Commissioner of Labor, plaintiff's claim was examined by five different forums. Plaintiff has made no allegations as to new evidence or as to incompetency of counsel in the prior proceedings.

■ As a final argument in favor of relitigation, plaintiff claims that he has a right to have the issues of whether or not he wilfully misrepresented his employment status and the amount of the overpayment determined by a jury. Plaintiff claims that it is a violation of his Seventh Amendment rights to have these issues determined by the administrative process.

■ The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." However, the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication. *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). The handling of unemployment insurance benefits claims was committed to the administrative process by the New York Legislature. N.Y.Labor Law §§ 620–626 (McKinney 1977). After a decision by the administrative agency, an adverse determination may be appealed to the courts of the state. N.Y.Labor Law § 624 (McKinney 1977). Because the New York Legislature was acting within its power when it assigned the factfinding process to the agencies of the state, and the agency was acting within its power when it determined the facts in question, plaintiff cannot relitigate the questions before a jury.

It having been established that plaintiff cannot relitigate the questions of whether he was totally unemployed, whether there were wilful misstatements, the amount of the overpayment, and whether the overpayment is recoverable, there are no questions of fact relating to defendant's counterclaim. Accordingly, the court grants defendant's motion for summary judgment on her counterclaim. It is further ordered, that because the plaintiff has had unemployment benefits withheld while this matter was pending, damages for the counterclaim will be set upon a sufficient showing of proof by the parties regarding the amount that plaintiff still owes on the overpayment debt.

Plaintiff next contends that the defendant's policy of withholding the entire amount of currently due benefits to offset a prior overpayment debt violates federal statutory requirements that a state pay unemployment benefits when due and that prohibit encumbrances on unemployment insurance. Furthermore, plaintiff claims that application of the setoff without an examination of his individual circumstances undermines congressional intent as it relates to the unemployment insurance program.

■ The unemployment compensation program is a joint federal-state effort. Only states which comply with federal statutory requirements qualify for federal funds in the administration of their unemployment benefit programs. 42 U.S.C. §§ 501–504; 26 U.S.C. § 3304. One of the federal requirements is set out in 42 U.S.C. § 503(a)(1), which provides that:

The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

(1) Such methods of administration ... as are found by the Secretary of Labor to be reasonably calculated to insure full

payment of unemployment compensation when due....

In *California Dept. of Human Resources Development v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), the Supreme Court examined the unemployment insurance statutory scheme and the meaning of the federal requirement that unemployment compensation be paid when due. The Court stated that in establishing the unemployment insurance program, Congress intended

> to provide a substitute for wages lost during a period of unemployment not the fault of the employee ... to give prompt if only partial replacement of wages to the unemployed, to enable workers "to tide themselves over, until they get back to work or find other employment...." Unemployment benefits provide cash to a newly unemployed worker "at a time when otherwise he would have nothing to spend," serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity.... *Id.* at 131, 132, 91 S.Ct. at 1353, 1354 (footnotes omitted).

The Court concluded that "when due" was

> intended to mean at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard. *Id.* at 131, 91 S.Ct. at 1353.

*Java* dealt with a California procedure which suspended payments pending an appeal, after an initial determination of eligibility had been made. The Supreme Court held that the procedure violated the statutory requirement that payments be made when due. *Id.* at 133, 91 S.Ct. at 1355. The Court stated that:

> [i]t would frustrate one of the Act's basic purposes—providing a "substitute" for wages—to permit an employer to ignore the initial interview or fail to assert and document a claimed defense, and then effectuate cessation of payments by asserting a defense to the claim by way of appeal. *Id.* at 134, 91 S.Ct. at 1355.

Plaintiff contends that by withholding currently due benefits to offset a prior overpayment that resulted through fraud, defendant has run afoul of the "when due" mandate. However, the "when due" provision only requires that a "state provide prompt payment of benefits to those who are eligible;" it "does not limit the power of the states to suspend or terminate eligibility for proper reasons...." *Blount v. Smith*, 440 F.Supp. 528, 530 (M.D.Pa.1977).

Recovery of overpayments that occur through fraud is required by both federal and state statutes. Section 105(b)(1) of the Emergency Unemployment Compensation Act, codified after 26 U.S.C. § 3304, provides that an individual is ineligible for further payments when an overpayment is received through fraud, until he or she complies with the applicable state fraud provision. *See Kostelic v. Bernardi*, 538 F.Supp. 620, 623 (N.D.Ill.1982). The subsection further authorizes each state to recover overpayments by deducting the amount owed from current federal unemployment benefits. *Id.* 26 U.S.C. § 3304(a)(10) does not allow a setoff of benefits for "any cause other than misconduct connected with [a person's] work, *fraud in connection with a claim for compensation,* or receipt of disqualifying income." (emphasis added).

New York law provides that a "claimant shall refund all moneys received because of such false statement or representation made by him." N.Y.Labor Law § 594 par. 4 (McKinney 1977). New York has recovered benefits obtained through fraud by applying a common law setoff. *See e.g., Soto v. Catherwood*, 35 A.D.2d 395, 317 N.Y.S.2d 70, (3d Dept.1970); *Claim of Marder*, 16 A.D.2d 303, 227 N.Y.S.2d 730 (3d Dept.1962). When an overpayment is received without fraud only 50% of currently due benefits are withheld.

In the present case, plaintiff was notified on January 28, 1980, that the local claims examiner had determined he had been overpaid $8,995 which he was obligated to repay the state. No payments would have been withheld until plaintiff had an extensive opportunity to litigate the question of whether there had been fraud in connection with his previous claims. The form notify-

ing plaintiff of the overpayment determination clearly warned the plaintiff that if he was found to have committed fraud, the payments would be recoverable by way of the setoff procedure. In June of 1981, when the New York court affirmed the decision of the board that plaintiff had been overpaid because of fraudulent statements by him, nothing had yet been withheld. In December of 1981, when plaintiff applied again for benefits following a layoff, no benefits were due to him. The state was obligated to withhold payments to repay plaintiff's debt and correctly applied the set off procedure. Therefore, there was no violation of the federal statutory requirement that benefits be paid when due.

■ Moreover, at the hearing before the ALJ, the plaintiff was accorded a full opportunity to present evidence in the form of witnesses and written material. He now claims that the statutory scheme was violated when his benefits were withheld without an additional hearing examining his individual circumstances. However, he was already on notice that future benefits would be withheld when he originally litigated the questions of fraud. Plaintiff was given one complete opportunity to litigate the questions of fact concerning the overpayment, which saw five separate forums hearing his claim. It is quite consistent with the statutory scheme that those who obtain benefits through fraud be required to pay them back. Recoupment of overpayments allows those who are truly deserving to receive funds from a limited source. *See Brewer v. Cantrell,* 622 F.Supp. 1320, 1324 (W.D.Va.1985).

■ Plaintiff also argues the setoff procedure as applied by the defendant violates 26 U.S.C. § 3304(a)(4) which provides that:

all money withdrawn from the unemployment fund of the state shall be used solely in the payment of unemployment compensation, exclusive of expenses of administration, and for refunds of sums erroneously paid into such fund and refunds paid in accordance with the provisions of section 3305(b).…

However, this provision must be read as part of an integrated scheme along with the other provisions of the Unemployment Tax Act, 26 U.S.C. §§ 3301–3311, and the Unemployment Compensation provisions of the Social Security Act, 42 U.S.C. §§ 501–504. *Blount,* 440 F.Supp. at 531. 26 U.S.C. § 3304(a)(10) specifically states that compensation can be denied to an individual due to fraud in connection with a claim for benefits. 42 U.S.C. § 503(a)(9) requires the replacement of any moneys expended for purposes other than those found necessary by the Secretary of Labor. The payment of benefits through fraud falls within the category of payments that must be recovered. *See Brewer,* 622 F.Supp. at 1324. Accordingly, the recoupment of overpayments by way of a setoff does not conflict with any of the provisions of the Social Security Act or the Unemployment Tax Act.[3] On the contrary, recovery of overpayments received through fraud is mandated by the statutory scheme.

■ Plaintiff's final claim for relief alleges that the setoff practice as employed by the defendant violates the Due Process Clause of the Fourteenth Amendment in that he was not afforded a hearing prior to the setoff of currently due benefits at which the individual circumstances of his case could be examined.

■ Unemployment benefits are a property interest protected by the due process requirements of the Fourteenth Amendment. *See Basciano v. Herkimer,* 605

3. Plaintiff's reliance on *International Union, et al. v. Michigan Employment Security Commission,* 517 F.Supp. 12 (E.D.Mich.1981) and *Gillies v. Dept. of Human Resources Development,* 11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110, is misplaced. *Gillies* was a California Supreme Court case that dealt with a state statute that permitted the state to recover overpayment unless such "recovery would be against equity and

good conscience." The court held that the appeals board had erroneously interpreted that statute when an automatic setoff was applied to recoup overpayments that occurred without fraud. *International Union* is not persuasive because the District Court there failed to reconcile 26 U.S.C. § 3304(a)(4) with the other provisions of the Unemployment Tax Act and the Social Security Act.

F.2d 605, 609 (2d Cir.1978); *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir.1985). In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court identified three factors in determining whether administrative procedures prior to the termination of disability benefits satisfied the requirements of due process. Unemployment benefits are similar to disability benefits in that they are not based on need, as are welfare benefits. *See Id.; Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The three distinct factors identified in *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335, 96 S.Ct. at 903 (citations omitted).

Under the first *Mathews* factor, the plaintiff's interest in receiving currently due benefits would be substantial, but "his interest was less compelling than that of an individual denied by government action the 'very means by which to live' ". *Basciano*, 605 F.2d at 610 *quoting Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018.

The second *Mathews* factor, the risk of an erroneous deprivation, is decisive. The plaintiff had a full and fair opportunity to litigate the questions of whether he acted fraudulently in obtaining benefits and whether or not the overpayment was recoverable. These questions were decided by an impartial factfinder at the administrative level and affirmed by the state court. It was only after the question of whether the payments were fraudulently obtained was answered that the setoff was applied. Therefore, the risk of an erroneous deprivation is almost nonexistent.

The final *Mathews* factor examines the burden that additional procedural requirements would entail. In *Tucker v. Cald-* *well*, 608 F.2d 140 (5th Cir.1979), the Fifth Circuit held that the claimant's due process rights were not violated when, "after a proper hearing to determine that appellant had received excessive unemployment benefits, the state recovered this excessive amount by reducing her future benefits without a special hearing." 608 F.2d at 145.

In the present case, the state has given the claimant the protection of a full hearing and the appeals process. An additional hearing "would result in so few, if any differences in the actual withholding of future benefits that such a procedure is not necessary to satisfy due process standards once liability for the overpayment has established." *Id.* at 144.

The *Mathews* balancing test show that the plaintiff's due process rights were not violated when the defendant withheld payments to setoff the overpayment debt that resulted from fraud. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Basciano*, 605 F.2d at 609 (citations omitted). In conclusion, this court finds that the present administrative procedures fully comport with due process.

### CONCLUSION

Neither federal statutory requirements nor the Due Process Clause were violated when the plaintiff's currently due benefits were withheld to offset a prior overpayment that resulted through the plaintiff's fraudulent statements. The plaintiff was given a complete opportunity to litigate the factual questions surrounding the state's claim. He cannot now relitigate those questions in this forum. Accordingly, this court grants defendant's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment.

IT IS SO ORDERED.