Steven J. LOSEY, Plaintiff,

v.

Lillian ROBERTS, as Industrial Commissioner of the State of New York, Defendant.

No. 82–CV–461.

United States District Court, N.D. New York.

Sept. 23, 1983.

Chemung County Neighborhood Legal Services, Inc., Ithaca, N.Y., for plaintiff; Paul Bennett, Ithaca, N.Y., of counsel.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendant; Steven Segall, Asst. Atty. Gen., New York City, of counsel.

McCURN, District Judge.

## MEMORANDUM–DECISION AND ORDER

Plaintiff Steven J. Losey brings this action pursuant to 28 U.S.C. §§ 1331 and 1343 basing his claims for relief on 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. § 1983. He challenges the decision of defendant Industrial Commissioner of the State of New York to withhold current unemployment benefits as an offset to a prior debt claim. He seeks declaratory and injunctive relief and restitution of unemployment benefits.

Plaintiff contends that the setoff practice as employed by the defendant (1) conflicts with the federal statutory requirement that each state, before it receives federal funds for its unemployment insurance program, demonstrate to the Secretary of Labor that its form of administration of the program is "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1); (2) violates the prohibition on any encumbrance on unemployment insurance, pursuant to 26 U.S.C. § 3304(a)(4); (3) violates the New York Constitution, art. IV, § 8,[1] and the fourteenth amendment, due process clause of the federal constitution; and (4) contravenes the purpose of the statutory unemployment benefits scheme in that the setoff was applied without inquiry into the individual financial circumstances of the plaintiff.

This matter is before the Court on defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Defendant contends that the Commissioner's exercise of the common law right of setoff in this instance (1) does not constitute a violation of the state and federal constitutions; (2) comports with the statutory requirements of 42 U.S.C. § 503 and 26 U.S.C. § 3304; and (3) is not inapposite to the prohibition of unemployment insurance encumbrances. For the reasons set forth below, the motion is denied.

The factual allegations of the complaint are accepted as true, as required under a Rule 12(b)(6) motion. *Jones-Bey v. Caso,* 535 F.2d 1360 (2d Cir.1976); *Fine v. City of New York,* 529 F.2d 70 (2d Cir.1975). Plaintiff is an employee at Ithaca Gun Company, Ithaca, New York, and has experienced periodic lay-offs whenever company business has slowed. Plaintiff applied for and received unemployment benefits at varying times between March, 1976 and May, 1979. The Commissioner, who administers the New York Unemployment Insurance Benefits Program, determined on January 28, 1980, that plaintiff had been overpaid $8,995.00, which he was obligated to repay to the State. The Commissioner further determined that 80 days of benefits were to be forfeited as penalty, pursuant to New York Labor Law § 594.

Plaintiff had a hobby of repairing television sets. The Commissioner found that even though plaintiff did not receive income in connection with this hobby, the activity did have a money earning potential and that plaintiff was thus guilty of a wilful misrepresentation that he was unemployed. Hence, he was found to have received an overpayment.

In December, 1981, Mr. Losey was again laid off and subsequently filed a new claim for unemployment benefits. Because of the prior overpayment, the Commissioner ruled that plaintiff, although otherwise eligible,

---

1. This section reads:

No rule or regulation made by any state department, board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state. The legislature shall provide for the speedy publication of such rules and regulations, by appropriate laws.

Art. IV, § 8.

could not receive benefits until the same was repaid through the offset procedure. This decision was appealed to the administrative law judge, who on February 1, 1982, sustained the determination below. Thereafter, on April 15, 1982, the Unemployment Insurance Appeal Board adopted the administrative law judge's findings of fact and opinion as its own. Without unemployment benefits, plaintiff had no income on which to support his family, or with which to make car and mobile home payments.

## DISCUSSION

### 1. The "when due" mandate

Only states which comply with the federal statutory requirements qualify for federal funds in the administration of their benefit programs. 42 U.S.C. §§ 501–504. The Secretary of Labor may only certify federal funds if the states' procedures comport with these requirements. 42 U.S.C. § 503(a) reads in pertinent part:

> The Board shall make no certification for payment to any State unless it finds that the law of such State, approved by the Board under the Federal Unemployment Tax Act, includes provision for—
>
> > (1) Such methods of administration ... as are found by the Board to be reasonably calculated to insure full payment of unemployment compensation when due....

*Id.* Plaintiff contends that defendant's use of setoff violates the "when due" requirement.

In *California Department of Human Resources Development v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), a section of the California Unemployment Insurance Code was found to violate the mandate of 42 U.S.C. § 503(a). The California statute under review provided that benefits to an employee would be suspended pending his employer's appeal of the determination of his eligibility; the period of suspension could last six to eight weeks.

Upon examination of the legislative history of Section 503, the *Java* Court stated that one of the purposes of the Act was "[t]o provide a substitute for wages lost during a period of unemployment not the fault of the employee." 402 U.S. at 130, 91 S.Ct. at 1353. The Court also determined that Congress was concerned with providing

> a first line of defense for ... [a worker] ordinarily steadily employed ... for a limited period during which there is expectation that he will soon be reemployed. This should be a contractual right not dependent on any means test.... It will carry workers over most, if not all, periods of unemployment in normal times without resort to any other form of assistance.

402 U.S. at 130, 91 S.Ct. at 1353, quoting Report of the Committee on Economic Security, Hearings on S. 1130 before the Senate Committee on Finance, 74th Cong., 1st Sess. 1311, 1321–22 (1935).

The Supreme Court further found that unemployment benefits were intended to "give prompt if only partial replacement of wages to the unemployed" and to "serve to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity." *Id.,* 402 U.S. at 131, 91 S.Ct. at 1354. Thus, the Court concluded that "the word 'due' ... means the time when payments are first administratively allowed as a result of a hearing which both parties have notice and are permitted to present their respective positions". *Id.*

New York's statutory provision for unemployment insurance is found at Labor Law §§ 500–643. Sections 594 and 597 of the Labor Law, as construed in *Matter of Marder,* 16 A.D.2d 303, 227 N.Y.S.2d 730 (1962), differentiate between those overpayments induced by fraud in the applications, and those obtained in good faith. Those overpayments resulting from a misrepresentation are recoverable, section 594, while those received in good faith are not, section 597. *Id.,* 227 N.Y.S.2d at 733. The purpose of the distinction between the two sections is to ensure that those who are involuntarily unemployed receive benefits. *Id.*

Section 594 paragraph 1 assesses as a penalty for a misrepresentation a forfeiture of a maximum of 80 effective days of bene-

fits. There is a two-year statute of limitations on the enforcement of the penalty. Section 594 paragraph 3. In addition, the State also has the authority to apply a setoff. Section 594 paragraph 4. Section 594 paragraph 4 merely codifies the common law right of setoff. The State still has a "common law right to recover benefits improperly paid out." *Soto v. Catherwood,* 35 A.D.2d 395, 317 N.Y.S.2d 70 (1970). A setoff is not the same as forfeiture under section 594; both are methods used to deter fraud. *Id.,* 317 N.Y.S.2d at 72.

The plaintiff argues that the setoff may not be applied in a manner that undermines Congressional intent as it relates to the unemployment insurance program. Plaintiff does admit that he owes the State money, but he opines that the State should look at his individual circumstances before it imposes the setoff policy. The blanket imposition of the setoff, contends the plaintiff, thwarts the purposes of the statutory scheme.

A Michigan statute that imposed a six-week penalty provision on claimants for unemployment benefits who had made a false representation in prior applications made within a 52-week period was invalidated in *International Union v. Michigan Employment Sec.,* 517 F.Supp. 12 (E.D.Mich. 1980). Although the district court took note of the State's legitimate need to deter fraud, it found that barring a worker from receipt of benefits on a later, unrelated claim would not be in accordance with legislative intent as explicated in *Java,* to pay benefits when due. *International Union,* 517 F.Supp. at 18. The court suggested that the Michigan legislature might devise other means to prevent fraudulent applications. *Id.,* 517 F.Supp. at 19. Otherwise,

benefits are not paid on a current claim when they are in fact due. *Id.*

Equitable considerations were held determinative in *Gilles v. Department of Human Resources Develop.,* 521 P.2d 110, 11 Cal.3d 313, 113 Cal.Rptr. 374 (1974), in which a California procedure for recovery of overpayments was rejected by the State's Supreme Court. The California court stated that "equity and good conscience" required that an assessment of individual circumstances be made before imposing recoupment on any claimant's benefits. The court noting recovery not always improper there questioned the State's interpretation of the statute.

■ Defendant here contends that *Gilles* stands for the proposition that a setoff procedure does not violate the "when due" requirement of the federal statute; plaintiff asserts that recoupment cannot be effected when it contravenes the goals of the unemployment insurance program. The Court finds that both are correct.

The procedure discredited by the *Gilles* court called for placing on notice every claimant initially found eligible, whose eligibility determination was appealed by the employer, that the claimant would be liable to repay all benefits received if the eligibility determination was overturned. Benefits were recouped if the appeal reversed the decision below. The court held that the State, in addition to providing notice, must before automatically recouping any overpayments, "consider such matters as the cause of overpayment ... whether the claimant changed his position in reliance upon receipt of the benefit, and whether recovery of the overpayment, by imposing extraordinary hardship on the claimant, would tend to defeat the objectives of the Unemployment Insurance Code." *Gilles,* 113 Cal.Rptr. at 381, 521 P.2d at 117.[2]

2. Another state court, the Colorado Supreme Court, upheld recoupment when no equitable reason barred recovery. *Duenas-Rodriguez v. Industrial Com'n,* 199 Colo. 95, 606 P.2d 437 (1980). The relevant Colorado statute provided that anyone who received an overpayment of unemployment benefits through no fault of the claimants might, in some cases, have future benefits subjected to offset. The court based

the authority to recoup on the provision in the Social Security Act, 42 U.S.C. § 404(b), permitting recovery of those benefits if neither the statutory purposes nor "equity and good conscience" would be offended. *Id. See Gilles v. Director of Labor,* 2 Ark.App. 301, 621 S.W.2d 10 (1981) where the court found recoupment against equity and good conscience as the un-

The *Gilles* court found, however, that set-off against future benefits for prior overpayments would not in all cases conflict with the meaning of the Act. The court stated:

> We conclude that although the assertion of a setoff against unemployment benefits often will frustrate the objectives of the Social Security Act, nevertheless Congress did not intend, in enacting section 303 [42 U.S.C. 503] of that Act, totally to prohibit setoff as a means of recovering overpayments.
>
> We note, however, that the federally administered social security and unemployment compensation programs permit recoupment, by means of setoff or civil action, only when such recoupment will not defeat the statutory purpose nor contravene equity and good conscience, and that federal cases and regulations interpret such language to require consideration of the individual circumstances of each claimant.

*Id.,* 113 Cal.Rptr. at 384, 521 P.2d at 120.

Other federal benefit programs rely on equitable factors when the question of recoupment of an overpayment arises. The Social Security program does not permit recovery "from any person who is without fault if such . . . recovery would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. § 404(b). Similarly, the Special Unemployment Assistance Program, [SUA] P.L. 93–567, Title II, Dec. 31, 1974, 88 Stat. 1850,[3] which provides benefits to those workers not covered under another unemployment insurance benefit program, includes a provision for recoupment. SUA section 205(d)(1) permits the administrator to take into account equitable factors, and places time and percentage limitations on any recoupments.

Accordingly, this Court concludes that plaintiff's allegation that the "when due" requirement has been violated states a claim sufficient to survive a motion to dismiss.

**2. Encumbrances**

Plaintiff has also challenged the setoff on the basis that it violates the prohibition found at 26 U.S.C. § 3304(a)(4). That section reads in pertinent part:

> (4) all money withdrawn from the unemployment fund of the State shall be used solely in the payment of unemployment compensation, exclusive of expenses of administration, and for refunds of sums erroneously paid into such fund and refunds paid in accordance with the provisions of section 3305(b). . . .

*Id.*

As plaintiff reads the above section, it bars encumbrances or liens on unemployment benefits. Defendant disagrees with this interpretation. In support, plaintiff cites *International Union* in which the court construed this section to mean that "garnishment or attachment of unemployment monies which are due the claimant violates the purposes of the federal Act, except in limited circumstances." *Id.,* 517 F.Supp. at 19.

This Court concludes that plaintiff has stated a claim on this basis for the purposes of a 12(b)(6) motion.

**3. Constitutional violations**

Plaintiff alleged that the setoff violated his due process rights under the fourteenth amendment to the federal constitution. As neither party addressed the motion papers to this argument, the Court declines to reach a determination of this issue.

Plaintiff also alleged that the setoff procedure violated the New York State Constitution, in particular article IV, section 8, because the policy was not published in the Department of State's Code of Rules and Regulations. Plaintiff withdrew this contention in his memorandum in opposition to the motion. At oral argument, plaintiff conceded that governments have a recognized common law right of setoff. *United*

---

employed claimant had unpaid rent, a broken down car, and was existing on food stamps.

**3.** Set out as a note under 26 U.S.C. § 3304.

States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Soto v. Catherwood,* 35 A.D.2d 395, 317 N.Y.S.2d 70 (1970); *Fahey v. Whalen,* 84 Misc.2d 1040, 376 N.Y.S.2d 819 (1975).

CONCLUSION

The motion to dismiss before the Court challenges the legal sufficiency of the complaint. The motion to dismiss can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Whether plaintiff is likely to prevail is not the question at this stage. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Clay v. Martin,* 509 F.2d 109 (2d Cir.1975).

Accordingly, defendant's motion pursuant to Rule 12(b)(6) is denied.

IT IS SO ORDERED.