**Patricia BREWER and James Parker, Plaintiffs,**

**v.**

**Ralph CANTRELL, in his official capacity as Commissioner, Virginia Employment Commission, Defendant.**

Civ. A. No. 84–0239–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 4, 1985.

Martin Wegbreit, Castlewood, Va., for plaintiffs.

**1322**

Susan T. Ferguson, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on a motion for summary judgment by the plaintiffs and a cross-motion for summary judgment by the defendant. Jurisdiction of the court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, 28 U.S.C. § 1343, and 42 U.S.C. § 1983. Plaintiffs allege that action taken by the Virginia Employment Commission violates the Social Security Act, 42 U.S.C. § 501 *et seq.*, the Federal Unemployment Tax Act, 26 U.S.C. § 3301 *et seq.*, the due process clause of the Fourteenth Amendment, and the equal protection clause of the Fourteenth Amendment. The defendant counters plaintiffs' arguments by alleging that plaintiffs' allegations are without merit, that plaintiffs may not maintain this action because there is no private right of action available in suits of this nature, and that this suit is barred by the Eleventh Amendment.

On September 4, 1979, Patricia Brewer left her job at Norton Community Hospital. She applied for unemployment benefits on September 12, 1979. It was determined that she was eligible for $39.00 per week for 14 weeks. But, after a hearing on December 12, 1979, the appeals examiner found that Mrs. Brewer had left work voluntarily. She was not entitled to any benefits. However, the Virginia Employment Commission (hereinafter, the Commission) had already paid Mrs. Brewer $546.00.

Using the address that Mrs. Brewer gave at the December 12, 1979 hearing, the Commission mailed overpayment notices to her. But Mrs. Brewer had moved to Ohio after the hearing. Even though she had left a forwarding address with the Postal Service, Mrs. Brewer testified that she never received any notices. The Commission also tried to recoup the overpayment from Mrs.

Brewer's state income tax refunds, but she never received any refunds.

After moving back to Virginia, Mrs. Brewer obtained employment with B.F. Robinette. She was laid off on November 8, 1984 and applied for unemployment benefits on November 13, 1984. The Commission determined that Mrs. Brewer was eligible for benefits of $63.00 per week for a period of 14 weeks, but she would have to repay the $546.00 overpayment out of these benefits. The Commission acted under Va.Code § 60.1–132 (1982)[1] which allows overpayments to be collected. Mrs. Brewer then filed this suit.

The Commission had also overpaid James Parker. When Mr. Parker lost his job with the Wise County Sheriff's Department, he applied for and was awarded unemployment benefits. Like Mrs. Brewer, Mr. Parker was told that he would have to repay the previous overpayment out of his benefits. He was allowed to intervene as a party-plaintiff in this case. The court issued preliminary injunctions which ordered the Commission to pay each plaintiff a minimum of $40.00 per week for as long as they met all the other requirements for benefits.

## I.

■ The defendant raises two defenses to this suit. The first is that the plaintiffs do not have a private cause of action. Defendant argues that a private cause of action does not exist in a suit of this nature. Private causes of action have regularly been allowed in suits based upon the Social Security Act, 42 U.S.C. § 301 *et seq. See, e.g. California Department of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); *Jenkins v. Bowling*, 691 F.2d 1225, 1228 (7th Cir. 1982); *Brown v. Porcher*, 660 F.2d 1001 (4th Cir.1981). To quote the Seventh Circuit in *Jenkins v. Bowling*, 691 F.2d 1225, 1228 (7th Cir.1982):

> weekly benefits in order to recoup previous overpayments if the benefits were erroneously award through no fault of the recipient.

1. Since this suit has been filed, Code of Virginia § 60.1–132 has been amended. The Commission is now only allowed to withhold 50% of the

As an original matter, one might wonder how a state statute could be challenged as inconsistent with Section 303(c) of the Social Security Act, and hence as invalid under the supremacy clause, when Section 303(a) does not purport to require anything of the states....

Despite the lack of any obvious basis in the language of Section 303(a) for such an (injunctive) remedy, the Supreme Court, though without discussion of the issue beyond an extremely cryptic dictum in *Rosado v. Wyman* [397 U.S. 397, 420–422, 90 S.Ct. 1207, 1221–1222, 25 L.Ed.2d 442 (1970)], has consistently assumed that it is a proper remedy,.... We regard the point as too well settled to be questioned by us.

While Section 303(a) is not in issue here, this illustrates that private causes of action are allowed under the Social Security Act.

Under 42 U.S.C. § 1983, a private cause of action is also allowed. In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the United States Supreme Court said "[T]he § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional rights." *Id.* 448 U.S. at 4, 100 S.Ct. at 2504. The Fourth Circuit Court of Appeals has allowed a private cause of action in unemployment benefits suits under 42 U.S.C. § 1983. *Brown v. Porcher*, 660 F.2d 1001 (4th Cir.1981); *cert. denied* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983).

■ Defendant also raises as a defense a claim that the Eleventh Amendment bars this claim. In *Brown, Id.*, the Fourth Circuit held that the unemployment compensation fund of South Carolina is a special fund which was administered separate and apart from all public monies or funds of that state. *Id.* at 1006. Virginia's unemployment compensation fund is almost identical to South Carolina's. It is a special fund. Code of Virginia § 60.1–106. All monies which are paid into the fund are from employers or entities which are treated as employers for this purpose, Code of Virginia §§ 60.1–75 and 60.1–89.1, along with federal funds and investment income. Money may not be taken from this fund except for payment of benefits. Code of Virginia § 60.1–111. Unemployment benefits are payable only from the unemployment compensation fund. Code of Virginia § 60.1–46. This protects the general funds of the public treasury from liability on suits on unemployment claims. The Eleventh Amendment bars suits which would cause funds to be paid out of the general treasury of a state. *See Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982). For the reasons stated above, the plaintiffs have a viable cause of action in this suit.

## II.

■ The main thrust of plaintiffs' first arguments is that the Commission's attempt to recoup the overpayments violates the federal statutory scheme of full payments of benefits when due. 42 U.S.C. § 503(a)(1). Plaintiffs argue that the Code of Virginia § 60.1–132 conflicts with 42 U.S.C. § 503(a)(1). Essentially, plaintiffs say that any withholding of benefits to pay the prior overpayment is not allowed.

The United States Supreme Court in *California Department of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971) defined the term "when due" of § 503(a)(1) as "[w]hen benefits are allowed as a result of a hearing of which both parties have notice and at which they are permitted to present their respective positions."

This definition of "when due" basically means that once a hearing [2] is held and it is determined that a person is due benefits, the benefits will be paid regardless of an appeal. This results in overpayments if, at the appellate hearing, it is determined that the recipient was not qualified to receive

**2.** Virginia allows payment before there is an administrative hearing. Ths is done by a deputy's review of a person's initial claim and may be done before the employer has had a chance to respond. This achieves the congressional purpose regarding unemployment benefits. *See California. Department of Health v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).

any benefits. States with limited unemployment benefit funds are being caught in a "catch–22." On one hand, the benefits must be paid at the earliest possible moment. On the other hand, limited funds are being extended to those who do not deserve them which results in a violation of 26 U.S.C. § 3304(a)(4):

> (4) all money withdrawn from the unemployment fund of the State shall be used solely in the payment of unemployment compensation, exclusive of expenses of administration, and for refunds of sums erroneously paid into such fund and refunds paid in accordance with the provisions of section 3305(b)....

These overpayments are not unemployment compensation.

In order to alleviate this problem, many states, including Virginia, have passed recoupment statutes.[3] These statutes are not designed to operate as penalties. They serve only to regain monies which have been awarded to the undeserving. When the undeserving become eligible for benefits, the overpayments are actually treated as advances.[4] The recipient's benefits are reduced by the amount which was erroneously paid. There are no fines levied, nor does the recipient have to pay any interest. If states are not allowed to recoup the overpayments, then those who truly deserve the benefits are punished. The funds are not unlimited.

In actuality, these recoupment statutes or some other means are required. 42 U.S.C. § 503(a)(9) states the following:

> (a) Provisions required

> The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

> .    .    .    .    .

> (9) Effective July 1, 1941, the replacement, within a reasonable time, of any moneys received pursuant to section 502

of this title, which, because of any action or contingency, have been lost or have been expended for purposes other than, or in amounts in excess of, those found necessary by the Secretary of Labor for the proper administration of such State law.

If a state is not allowed to recoup monies which were expended in overpayments, then the Secretary of Labor is required to stop paying federal unemployment grants. These monies help subsidize the state's unemployment compensation funds.

Several state courts have dealt with their recoupment statutes. These cases have found that the statutes do not conflict with the Social Security Act. *See e.g., Gilles v. Department of Human Resources* 11 Cal.3d 313, 113 Cal.Rptr. 374, 521 P.2d 110 (1974). State courts have also held that their state is allowed to recover overpayments. *See e.g., Williams v. Molded Electronics, Inc.,* 305 Minn. 562, 233 N.W.2d 895 (1975).

This court feels that § 60.1–132 of the Code of Virginia does not violate the "when due" provision of 42 U.S.C. § 503(a)(1). It is a statute that is needed under the requirements of the Social Security Act and is not in violation of the Act.

### III.

■ Plaintiffs also argue that the State's Employment Commission's actions violate 42 U.S.C. § 503(a)(3):

> The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

> .    .    .    .    .

> (3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied;

---

**3.** Code of Virginia § 60.1–132 is Virginia's recoupment statute for unemployment benefits.

**4.** *See Cardenas v. Unemployment Comp. Bd.,* 388 A.2d 765, 767 (Pa.Cmwlth.1978).

The argument is that Mrs. Brewer did not have another "bite at the apple," a second hearing. Initially, Mrs. Brewer received unemployment compensation. Then, at a hearing on December 12, 1979, an appeals examiner found that Mrs. Brewer was not entitled to benefits. Notices were mailed to her by the Commission using the address which Mrs. Brewer gave at the hearing. The notice informed Mrs. Brewer how to appeal the decision. Mrs. Brewer had left Virginia. But, according to her testimony, she had left a change of address card with the post office. The Commission made a good faith effort to notify Mrs. Brewer of their decision. The Commission did all that it was required to do. When benefits were awarded, the Commission paid the plaintiffs. When it was determined that the plaintiffs did not deserve the benefits, the Commission sent notices to them as required by Code of Virginia § 60.1–61. The attempts to collect the overpayments were made pursuant to Code of Virginia § 60.1–132. (See Defendant's exhibits 1–7, attached to memoranda and affidavit of Robert W. Shields.).

Mrs. Brewer had a duty of inquiry.

When a party has information or knowledge of certain extraneous facts which of themselves do not amount to, nor tend to show, an actual notice, but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim, or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to the discovery of the truth, to a knowledge of the interest, claim, or right which really exists, put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim, or right. In other words, whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is chargeable with all the facts which, by a proper inquiry, he might have ascertained. (Footnotes omitted) 58 Am.Jur.2d *Notice* § 8.

Mrs. Brewer had been to a hearing. She knew that her benefits were the issue of that hearing. She had the means at hand to inquire about the ruling. In this modern age of communication and mail service, a simple telephone call or a letter would have given her the results of the hearing. It is totally unthinkable that a reasonably prudent person would not inquire as to what happened at a hearing which involved her personally.

"All persons are charged with knowledge of the provisions of statutes and must take notice thereof." (footnotes omitted). 58 Am.Jur.2d *Notice* § 21 (1971). Since Mrs. Brewer lived in Virginia and expected to recover under the Virginia Unemployment Compensation program, she has notice of all of the laws which affect the program. This included § 60.1–132 of the Code of Virginia. Mrs. Brewer had a fair hearing before an impartial examiner. The state is not required, on its initiative, to grant another hearing.

## IV.

Plaintiffs also argue that Virginia Code § 60.1–132 violates the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(4) which states:

(a) Requirements.—The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission which he finds provides that—

. . . . .

(4) all money withdrawn from the unemployment fund of the State shall be used solely in the payment of unemployment compensation, exclusive of expenses of administration, and for refunds of sums erroneously paid into such fund and refunds paid in accordance with the provisions of section 3305(b); except that—

(A) an amount equal to the amount of employee payments into the unemployment fund of a State may be used in the payment of cash benefits to individuals with respect to their disability, exclusive of expenses of administration;

(B) the amounts specified by section 903(c)(2) of the Social Security Act may, subject to the conditions prescribed in such section be used for expenses incurred by the State for administration of its unemployment compensation law and public employment offices; and

(C) nothing in this paragraph shall be construed to prohibit deducting an amount from unemployment compensation otherwise payable to an individual and using the amount so deducted to pay for health insurance if the individual elected to have such deduction made and such deduction was made under a program approved by the Secretary of Labor; . . . .

Plaintiffs cite three cases which they claim support their position. The first case is *Jordan v. Fusari,* 496 F.2d 646 (2d Cir. 1974), *on remand,* 422 F.Supp. 1179 (D.Conn.1975). This was a case where successful plaintiffs attempted to have attorney's fees deducted from benefits. This was not allowed. The second case, *International Union v. Michigan Employment Security Commission,* 517 F.Supp. 12 (E.D.Mich.1980), dealt with a statute which had punitive penalties for those who engaged in fraud in order to receive benefits. The last case is *Losey v. Roberts,* 570 F.Supp. 1465 (N.D.N.Y.1983). *Losey* held that an allegation that an overpayment recovery provision violated 26 U.S.C. § 3304(a)(4) was a sufficient claim to survive a motion to dismiss. No decision has yet been reached on the merits.[5]

None of the cases which plaintiffs cite deal directly with the factual situation which arose in this case. In *Jordan, supra,* the fees were to be paid to a third party, someone who was not eligible for unemployment benefits. In *International Union, supra,* the Michigan statute called for punitive penalties and the state gained a windfall profit. Anyone who had previously engaged in fraudulent activities to gain unemployment benefits was denied payment for the first six weeks of his lawful compensation. The state gained

this extra money in its unemployment fund. In *Losey, supra,* there has not been a decision on the merits. It deals only with a motion to dismiss. In this case at bar, the state is dealing with the recipient. There are no third parties involved, nor are there any punitive statutes. The case has moved beyond a motion to dismiss. It is being decided on a summary judgment motion.

The benefits in this case are, to reiterate, being treated as advances. (*See* footnote 4). To allow plaintiffs to receive both the overpayments and the benefits gives a windfall to the plaintiffs. There can be no violation of 26 U.S.C. § 3304(a)(4) as plaintiffs claim because there is not any money being withdrawn. The previous overpayments were withdrawn and paid to the plaintiffs when the benefits were not deserved. That may have been a violation of 26 U.S.C. § 3304(a)(4). But in order to have a violation of 26 U.S.C. § 3304(a)(4), money must be withdrawn from the unemployment funds.

### V.

■ Plaintiffs also raise a due process argument. They claim that the Code of Virginia § 60.1–132 violates the due process clause of the Fourteenth Amendment. Plaintiffs claim that the unemployment compensation benefits are a constitutionally protected property right. Property interest in a benefit was defined by the U.S. Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Unemployment benefits have been held to be a constitutionally protected property right by some courts. *See Ross v. Horn,* 598 F.2d 1312 (3rd Cir.1979), *Camacho v. Bowling,* 562 F.Supp. 1012 (N.D.Ill.1983). "Property interests, of course, are not cre-

---

5. No decision has been made as of October 1, 1985.

ated by the Constitution. Rather they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

The Virginia Supreme Court has never ruled on whether the right to unemployment benefits is a property interest. The Virginia Court has only assumed that a property interest may exist. *Klimko v. Virginia Employment Commission*, 216 Va. 750, 222 S.E.2d 559 (1976). This court shall follow the Virginia Supreme Court's lead and just assume that a property interest may exist.

The right to due process must be given in the administrative levels. In light of the following discussion, this court feels that the plaintiffs were given due process and that § 60.1–132 of the Code of Virginia does not violate the due process clause.

Throughout history, property has been used to pay debts. If payment on a debt were overdue, property could be seized to pay that debt. Judgments are taken. Garnishment of monies owed to a debtor may be had by a creditor. Employers routinely withhold amounts from their employees' wages which the employees owe them. This is a common practice and is usually made known to the employees when they start to work. By analogy, the plaintiffs are likened unto employees and the Commission is an employer who is withholding debts owed to him. Plaintiffs had knowledge of the practice and debt. It is given in § 60.1–132.

The Commission's handling of plaintiffs' claims met all articulated due process guidelines. There was no erroneous taking of property. The plaintiffs received fair hearings in which it was determined that they were not due the first series of payments. Afterwards, there was a chance to appeal. The plaintiffs had notice of § 60.-1–132 (discussed *supra*). They knew or should have known that they were not entitled to the first payments when they applied for benefits the second time.

Plaintiffs are, in effect, asking for a relitigation of issues years after they were originally decided. There must be a finality in decisions; otherwise, we are placed upon a slippery slope which leads to relitigating the same issue over and over again.

Also, the plaintiffs have not fully pursued their state remedies. No suit has been filed in state court. There are still opportunities available to them to pursue post deprivation remedies in state courts. The United States Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a 42 U.S.C. § 1983 suit, ruled that if a state has a procedure which will fully remedy a claim for property deprivation, then that procedure will be sufficient to satisfy the requirements of due process. This ruling, logically, may also apply in situations such as this. The plaintiffs may bring suit in the circuit courts of the Commonwealth of Virginia. This would remedy any deprivation which may have occurred if it was determined that their rights of due process had been violated. No federal action should be taken if the state has such an adequate remedy. The plaintiffs should pursue their state's remedy fully before turning to the federal courts.

### VI.

Plaintiffs argue that defendant's actions also violate the equal protection clause of the Fourteenth Amendment. Equal protection guarantees that similarly situated individuals will be dealt with in a similar manner by the government. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947). Plaintiffs say that they are being treated differently under § 60.1–132 than are individuals under § 60.1–61. This is true. But, plaintiffs are not in the same situation as people subject to § 60.1–61. Section 60.1–61 applies to current benefits. It does not apply to collection of overpayments. Section 60.1–132 applies to the collection of overpayments. Section 60.1–61 of the Code of Virginia provides in part:

**1328**

Notwithstanding any other provision of this chapter, benefits shall be paid promptly in accordance with a determination or redetrmination under this chapter, or decision of an appeal tribunal, the Commission, the Board of Review or a reviewing court under §§ 60.1–67.1 and 60.1–69 upon the issuance of such determination, redetermination or decision (regardless of the pendency of the period to file an appeal, or petition for judicial review that is provided with respect thereto in this chapter, or the pendency of any such appeal or review); unless and until such determination, redetermination or decision has been modified or reversed by a subsequent redetermination or decision, in which event benefits shall be paid or denied for weeks of unemployment thereafter in accordance with such modifying or reversing redetermination or decision. If a decision of an appeal tribunal allowing benefits is affirmed in any amount by the Commission, benefits shall continue to be paid until such time as a court decision has become final so that no further appeal can be taken. If the Commission's decision is finally modified or reversed to deny benefits, the modification or reversal shall apply to any weeks of unemployment that begin after the final decision; provided further, that if an appeal is taken from the Commission's decision, benefits paid shall result in a benefit wage charge to the account of the employer under § 60.1–70 only when, and as of the date on which, as the result of an appeal, the courts finally determine that the Commission should have awarded benefits to the claimant or claimants involved in such appeal. (Code 1950, § 60.49; 1954, c. 203; 1966, c. 30; 1968, c. 738; 1970, c. 104; 1972, c. 692; 1974, c. 466; 1976, c. 708; 1980, cc. 408, 426; 1982, c. 363.)

Any action under this section will only affect the ongoing payments. If there are any overpayments, the Commission falls back on § 60.1–132 to collect them. Virginia courts have consistently held that § 60.-1–61 does not apply to overpayments and just to current benefits.[6]

It is obvious that persons who fall under § 60.1–61 are in a different situation than those under § 60.1–132. Because they are in different situations, the Commission may treat them differently. There has been no violation of the equal protection clause in this instance. The Commission treats all people who are under § 60.1–61 alike. The Commission also treats all people who are under § 60.1–132 alike. Plaintiffs' argument of an equal protection violation is without merit.

For the reasons discussed above, plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

___

**6.** Defendant has submitted numerous decisions of courts not of record in the Commonwealth of Virginia from various areas of the State, all of which support this view.