1 F.3d 1231
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Danny M. KELLY, Plaintiff, Appellant,
v.
Niles L. NORDBERG, et al., Defendants, Appellees.
 No. 93-1138.
 United States Court of Appeals,
First Circuit.
 August 17, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 Danny M. Kelly on brief pro se.
 Scott Harshbarger, Attorney General, and Steve Berenson, Assistant Attorney General, on Memorandum in Support of Appellee's Motion for Summary Affirmance, for appellee.
 D. Mass.
 VACATED AND REMANDED.
 Before Breyer, Chief Judge, Selya and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 The narrow question before us is whether plaintiff was required to exhaust state administrative remedies before bringing this suit. Plaintiff appears pro se seeking unspecified damages, injunctive and declaratory relief against the Massachusetts Department of Employment and Training's ("DET's") practice of disqualifying for unemployment benefits those persons who travel outside of the State for the dual purpose of seeking work and engaging in other activities. The district court granted to defendant a judgment on the pleadings. We vacate and remand without prejudice to consideration of any other issue in the case.
 
 
 2
 A grant of judgment on the pleadings is subject to plenary review. International Paper Co. v. Jay, 928 F.2d 480, 482 (1st Cir. 1991). We accept as true all of the non-movant's factual allegations and draw all reasonable inferences in his favor. Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991). We are aided here by the parties' apparent agreement as to the administrative posture of plaintiff's claim.
 
 
 3
 According to the complaint, plaintiff was qualified to receive unemployment benefits of $282 per week beginning in September, 1991, after he lost his job as a software engineer at Wang Laboratories. He sought new employment locally and in the midwest. When he filed a required periodic claim for benefits in December, 1991, he certified that he would be in Chicago, Illinois from December 23, 1991 until January 5, 1992. He alleged that his reason for travel was to look for work and to visit family and friends. He also certified that while he was there he actively sought work, and was "available" for employment.[1]
 
 
 4
 The DET denied plaintiff any benefits for the two weeks he was in Chicago because of the dual purpose of his trip. According to both parties' pleadings, the agency's rule, as reflected in its "Service Representative Handbook," is that a claimant who travels or stays outside of the registration area must do so "for the SOLE purpose of seeking new employment or reporting for a pre-arranged job or job interview" in order to qualify for benefits.[2] Answer Exh. D., Complaint p 7. Based on plaintiff's written answers to questions about his trip, a DET adjudicator decided that plaintiff's trip "did not meet the requirements of the law because ... looking for employment was not the sole purpose of the trip." Answer p 7, Exh. D.
 
 
 5
 Under M.G.L. c. 151A, Sec. 39(b), a claimant may seek reconsideration of the DET's initial determination by requesting a de novo hearing before a review examiner. In the absence of such a request, the initial determination is final. The parties agree that plaintiff did not request agency review, but the DET spontaneously treated plaintiff's correspondence as a notice of appeal, advising plaintiff of a hearing date. Plaintiff did not appear at the scheduled hearing and did not respond to a further notice from the DET offering to consider any justifications for his failure to appear. DET dismissed the appeal.
 
 
 6
 Plaintiff instead filed this complaint pro se alleging that DET's travel rule unconstitutionally infringed on his right to travel and to enjoy the same benefits as lifelong residents of Massachusetts.[3] Defendant answered and moved for judgment on the pleadings on the ground that plaintiff had failed to exhaust his administrative remedies and failed to state a claim. At the hearing on the motion, the judge inquired whether DET was still willing to afford a hearing on plaintiff's claim and gave DET two weeks to respond to the question.[4] DET answered with an affidavit stating that it would reschedule a hearing if the plaintiff showed satisfactory reasons for his initial failure to appear. The judge then dismissed the instant action for failure to exhaust administrative remedies, "in view of the Commissioner's willingness to afford what appears to be a meaningful hearing on the merits."
 
 
 7
 We sense in the district court's decision an attempt to fashion an equitable solution to a practical dilemma. The DET procedure strikes us as affording to a pro se plaintiff the benefit of a fast, streamlined, and certainly less expensive procedure for litigating the issue he urges upon the federal courts.[5] Moreover, requiring exhaustion of administrative remedies normally "serves the interests of accuracy, efficiency, agency autonomy and judicial economy." Ezratty v. Puerto Rico, 648 F.2d 770, 774 (1st Cir. 1981). While common sense would seem to dictate that plaintiff ought to avail himself of the benefits of the state forum, plaintiff here adamantly insists, as he did in his memorandum below, that he has deliberately chosen to bypass the state's procedure in favor of a federal forum.
 
 
 8
 The court cannot insist on exhaustion of state remedies as a prerequisite to a federal suit, however, where Congress has left that choice to the plaintiff. Reading plaintiff's complaint liberally, especially in light of his pro se status, it appears to assert a claim under 42 U.S.C. Sec. 1983, in that plaintiff alleges that the state defendant adopted a policy which violates his right to equal protection of the laws, and impedes his constitutional right to interstate travel.[6] It may also be read as attempting to state a claim for violation by state officials of Title III of the Social Security Act, 42 U.S.C. Sec. 503(a)(1), which requires states receiving federal funds to provide for "methods of administration ... that are ... reasonably calculated to assure full payment of unemployment compensation when due." The courts have consistently recognized a private right of action for equitable relief to enforce this provision.[7]
 
 
 9
 "It is now firmly settled that exhaustion or resort to state remedies is not a prerequisite to a Sec. 1983 claim." Miller v. Hull, 878 F.2d 523 (1st Cir.) (citing Patsy v. Board of Regents, 457 U.S. 496 (1982)), cert. denied, 493 U.S. 976 (1989). A section 1983 claimant who alleges that he has been injured by an unconstitutional practice need not pursue state administrative remedies "but may proceed directly to federal court" in order to press his claims. Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 260 (1st Cir. 1987) (while abstention may be warranted where a civil rights plaintiff seeks to use the federal courts to nullify an ongoing coercive state proceeding, where the plaintiff is given the option to initiate a state proceeding, the Patsy rule prevails), cert. denied, 486 U.S. 1044 (1988). Cf. Darby v. Cisneros, 1993 U.S. LEXIS 4246 at (June 21, 1993) (in suit under the APA federal courts do not have the authority to require a plaintiff to exhaust administrative remedies where neither statute nor rules mandate administrative appeals in order to render the agency action final, citing Patsy with approval).
 
 
 10
 And the cases recognizing a private right of action to enforce 42 U.S.C. Sec. 503 leave little doubt that state administrative exhaustion cannot be required where the challenge is to a state rule that allegedly conflicts with the "payment ... when due" provision. See, e.g., Java, 402 U.S. at 121 (where private plaintiffs brought class action challenging state practice of suspending unemployment benefits pending appeal, suit commenced before conclusion of administrative hearings allowed, without discussion); Wheeler v. Vermont, 335 F. Supp. 856, 860 (D. Vt. 1971) (exhaustion of state administrative remedies not required where claimant challenges agency's initial redetermination practice and terminates benefits before a hearing); cf. International Union, UAW v. Brock, 477 U.S. 274 (1986) (citing cases decided under 42 U.S.C. Sec. 503 for holding that Eleventh Amendment does not bar suits challenging application of federal guidelines to benefit claims, even though individual eligibility for benefits may be confined to state processes); Shaw v. Valdez, 819 F.2d 965, 966 n.2 (10th Cir. 1987) (availability of state judicial remedies does not bar private suit challenging state's notice provisions under Sec. 503(a)(3) where deprivation is allegedly caused by established state procedure, rather than random or unauthorized act).
 
 
 11
 Exhaustion is not required in cases challenging system wide errors at the initial benefits determination stage because of the economic aims of the statute. Prompt replacement of wages is vital to effectuate "[b]oth the humane (or redistributive) objectives of unemployment insurance and its macroeconomic objective (dampening the business cycle by keeping up the purchasing power of people laid off in a recession) ... " Jenkins, 691 F.2d at 1229 (Posner, J.); see also Java, 402 U.S. at 131-32 (Congress' intention in enacting Sec. 503(a)(1) was to assure both purposes by making payments available at the earliest stage that is administratively feasible). While individual administrative appeals may effectively correct errors in individual cases, the process may not result in speedy correction of systemic errors at the initial determination stage. Cf. Schoolcraft v. Sullivan, 971 F.2d 81, 87 (8th Cir. 1992) (under statute allowing discretionary waiver of exhaustion requirements, applying similar reasoning to waive requirement).
 
 
 12
 In conclusion we decide here only the exhaustion of remedies issue presented to us. We express no opinion on any other question of justiciability, including standing, ripeness, mootness, or the like. And as our footnotes repeatedly emphasize we express no opinion on the merits of plaintiff's claims, the desirability of the relief sought, nor the ability of these claims to withstand a proper motion for summary judgment or other dismissal on the merits.
 
 
 13
 Vacated and remanded.
 
 
 
 [1]
 Under Massachusetts' Employment Security Law, to be eligible for unemployment compensation during any week a claimant must provide evidence to the employment office that he is available for and actively engaged in a systematic and sustained effort to obtain work. M.G.L. c. 151A, Secs. 24, 30
 
 
 [2]
 The record does not explain DET's rulemaking practices, but we note a suggestion in the case law that agency rules relating to eligibility are frequently incorporated into circulars, rather than the Code of Massachusetts Regulations ("CMR"). See Grand v. Director of the Div. of Employment Sec., 393 Mass. 477, 480-81, 472 N.E.2d 250, 252 (1984) (rejecting claimant's argument that review examiner acted without standards when he held claimant's job search to be inadequate, because agency's circularized notice "constitutes a guideline or standard set forth by the division"). We note, too, rules in the CMR for interstate claims subject to plans approved by the Interstate Conference of Employment Security Agencies. See 430 C.M.R. Secs. 4.02, 4.05; see also M.G.L. c. 151A, Sec. 66. There are insufficient facts in this record to determine the relevancy, if any, of the codified rules
 
 
 [3]
 Claimants who remained in the State were allowed benefits if they actively sought work "at least three days a week and made at least four job contacts/week," according to a 1984 Supreme Judicial Court opinion. Grand, 393 Mass. at 481, 472 N.E. at 252. The record before us offers no facts as to DET's current eligibility rules for those who remain in the state while seeking work, facts against which any claim of unequal treatment necessarily must be measured. Without a full record we imply no opinion as to the ability of the instant claim to withstand a motion to dismiss on the merits
 
 
 [4]
 Since the parties have not provided a transcript of the hearing, our understanding of the proceedings below is limited to the judge's abbreviated written orders
 
 
 [5]
 Plaintiff maintains that an agency factual hearing would be futile since the examiner would have no power to change the DET's admitted policy, only to award benefits. However, state law also provides a subsequent discretionary appeal to the Board of Review, which is expressly empowered to search the record for errors of law as well as fact. M.G.L. c. 151A, Secs. 40, 41. And claimants are further afforded a streamlined method for appeal to the state's district courts where jurisdiction includes any constitutional errors, errors of law or procedure. M.G.L. c. 151A, Sec. 42; M.G.L. c. 30, Sec. 14(7)
 
 
 [6]
 We emphasize again that the record is too slim to assess the ability of these claims to withstand a proper motion to dismiss on the merits. We have before us no information on basic issues like the actual burden, if any, on interstate travel or commerce and the state's legitimate interest or need for the rule. Moreover the factual basis for plaintiff's unequal treatment claim is not clear, see supra n.3. See generally Hooper v. Bernalillo County Assessor, 472 U.S. 612, 624 (1985); Zobel v. Williams, 457 U.S. 55, 58-65 (1982); Jones v. Helms, 452 U.S. 412, 417-22 (1981); Shapiro v. Thompson, 394 U.S. 618 (1969) (overruled in part on another and by Edelman v. Jordan, 416 U.S. 1000 (1974)); Edwards v. California, 314 U.S. 160 (1941); Crandall v. Nevada, 73 U.S. (6 Wall.) 35 (1868). We observe only that general federal question jurisdiction is sufficiently pleaded under 28 U.S.C. Sec. 1331. See Charles A. Wright et. al., 5 Federal Practice and Procedure Sec. 1209 (2d Ed. Supp. 1993)
 
 
 [7]
 See California Dep't of Human Resources Dev. v. Java, 402 U.S. 121 (1971); Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471 (1977). Though the statute contains no language allowing a private action, to assure state compliance, the result makes "practical sense." Jenkins v. Bowling, 691 F.2d 1225, 1228 (7th Cir. 1982); see also Shaw v. Valdez, 819 F.2d 965 (10th Cir. 1987); Wilkinson v. Abrams, 627 F.2d 650 (3d Cir. 1980); Pennington v. Ward, 1989 U.S. Dist. LEXIS 7651, at (N.D. Ill.) (citing Maine v. Thiboutot, 448 U.S. 1 (1980) for point that Sec. 1983 embraces claims that state defendants violated rights secured by statute); Brewer v. Cantrell, 622 F. Supp. 1320 (W.D. Va. 1985), aff'd without op., 796 F.2d 472 (4th Cir. 1986)
 Payment "when due" is interpreted by the federal regulations to mean with "the greatest promptness that is administratively feasible," 20 C.F.R. Sec. 640.3(a). We have not been offered a direct explanation of DET's procedure for handling travel claims, but its brief suggests that the travel rule is an initial administrative "rule of thumb." DET states that despite the "sole purpose" language in the rule and the dual purpose of plaintiff's trip, plaintiff's benefits could have been reinstated at a factual hearing. A review examiner, we are told, could have weighed evidence of the comparative time plaintiff devoted to seeking work versus the time he spent on personal matters to arrive at a result different from that mandated by the rule. We read this as implying that DET initially denies benefits to claimants who travel for a dual purpose as an administrative "rule of thumb" subject to change on appeal in individual cases. Whether this procedure is one sufficiently calculated to result in payment "when due" within the meaning of 42 U.S.C. Sec. 503(a)(1), is a fact specific issue which we cannot meaningfully assess on the rudimentary record before us. See Fusari v. Steinberg, 419 U.S. 379, 387, 389 (1975). Nor can we determine the relevancy, if any, of the federal statute encouraging certain interstate payments and procedures on behalf of unemployed workers who relocate while seeking employment. See 26 U.S.C. Sec. 3304(B)(9); see also M.G.L. c. 151A, Sec. 66.